The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOWELL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KING COUNTY HOUSING AUTHORITY, et al.,<br><br>    Defendants. | Civil Action No. 22-cv-645-BJR<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' TITLE VI CLAIM |

## I.    INTRODUCTION

Plaintiffs, former employees of Defendant King County Housing Authority ("KCHA") and professional subordinates of Defendant Stephen J. Norman (together, "Defendants"), brought this action alleging discriminatory employment practices in violation of the Washington Law Against Discrimination, the Washington Equal Pay and Opportunities Act, the Civil Rights Act of 1866, Equal Protection Clause to the United States Constitution, Title VI of the Civil Rights Act of 1964, and the parties' employment agreements.  Defendants have moved to dismiss Plaintiffs' Title VI claim under Federal Rule of Civil Procedure 12(b)(6).  Having reviewed the motion, the record of the case, and the relevant legal authorities, the Court will grant Defendants' motion to dismiss.

The reasoning for the Court's decision follows.

## II. BACKGROUND

Plaintiffs are former "high-level female executives who held public administration leadership positions at the King County Housing Authority under Executive Director Stephen J. Norman." First Amended Complaint ("FAC"), Dkt. 14 at 1. Plaintiffs claim that they "uncovered multiple wrongs and ongoing claims of [employment] discrimination against women and people of color over at least the past decade at the King County Housing Authority." *Id.* at 2. Plaintiffs allege that they raised their concerns about systemic employment discrimination to Defendant Norman, who was KCHA's highest-ranking executive at all relevant times. *Id.* Defendants then allegedly retaliated against Plaintiffs for raising these concerns by degrading their working conditions to the point that they became "intolerable." Pl. Opp'n, Dkt. 19 at 8. In addition to reporting discrimination against others, Plaintiffs claim that Defendants discriminated against them individually based on their race or gender. FAC, Dkt. 14 at 27.

KCHA is an independent municipal corporation created by Washington statute. *Id.* at 3. It is undisputed that KCHA receives federal funds authorized by various federal housing statutes and regulations, including the Moving to Work program and the Family Self-Sufficiency program. Pl. Opp'n, Dkt. 19 at 10. KCHA administers housing programs for the county using these funds. Plaintiffs do not allege that KCHA administered these programs or distributed funds in a discriminatory manner, only that they engaged in employment discrimination and related retaliation. *See generally* FAC, Dkt. 14.

## III. LEGAL AUTHORITY

As noted above, Plaintiffs have brought claims under several state and federal statutes. Defendants have moved to dismiss only Plaintiffs' Title VI claim.

### A. Federal Rule of Civil Procedure 12(b)(6)

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). A court must also consider all inferences favoring the non-moving party that a trier of fact could reasonably draw from the factual allegations in the complaint. *Ileto*, 349 F.3d at 1200.

### B. Title VI of the Civil Rights Act of 1964

Title VI prohibits discrimination "on the ground of race, color, or national origin . . . under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute creates a private right of action in cases of intentional discrimination. *Mason v. Washington State*, 2017 WL 2559621, at *3 (W.D. Wash. June 13, 2017). This includes claims of retaliation for engaging in a protected activity, such as complaining about an agency's discriminatory administration of funds. *Id.* at *4. However, the applicability of Title VI to employment discrimination is limited. Section 604 of the statute states:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency[1] with respect to any employment practice of any employer, employment agency, or labor organization <u>except where a primary objective of the Federal financial assistance is to provide employment</u>.

42 U.S.C. §2000d-3 (emphasis added). Courts have interpreted the "primary objective" language as "require[ing] a logical nexus between the use of federal funds and the practice toward

---

[1] The Ninth Circuit has held that this section also applies to individuals. *Temengil v. Trust Terr. of Pac. Islands*, 881 F.2d 647, 653 (9th Cir.1989).

which [the] action is directed." *Johnson v. Cty. of Nassau*, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (quoting *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)).  "To show a logical nexus, the plaintiff 'must show either (1) that a primary objective of the federal funding defendant receives is to provide employment, or (2) that the employment discrimination complained of necessarily causes discrimination against the intended beneficiaries of the federal funding.'"  *Fields v. Am. Airlines, Inc.*, No. 19-903-KSM, 2021 U.S. Dist. LEXIS 180615, at *43-44 (E.D. Pa. Sep. 22, 2021) (quoting *Rogers v. Bd. of Educ.*, 859 F. Supp. 2d 742, 751 (D. Md. 2012) (collecting cases)).

The Supreme Court has repeatedly stated that the purpose of Title VI is "to ensure that funds of the United States are not used to support racial discrimination," and that "it [is] unnecessary to extend Title VI more generally to ban employment discrimination, as Title VII comprehensively regulates such discrimination."  *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 633 (1984) (quoting 110 Cong. Rec. 6544 (1964) (remarks of Sen. Humphrey)).  The Court noted "Congress' concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII," and that § 604 (and the "primary objective" language) was added "to clarify that 'it was not intended that [T]itle VI would impinge on [T]itle VII.'"  *Johnson v. Transportation Agency, Santa Clara Cnty, Cal.*, 480 U.S. 616, 627 n.6 (1987) (quoting 110 Cong. Rec. 11615 (1964)); *see also* Department of Justice, Title VI Legal Manual (Updated) § X.A (Apr. 22, 2021) ("Congress did not intend Title VI to be the primary federal vehicle to prohibit employment discrimination.").  Therefore, the availability of Title VI retaliation claims stemming from employment discrimination is limited to those that possess a logical nexus with the federal funds provided to the agency and that are not covered by Title VII.

## IV.  DISCUSSION

As noted above, to demonstrate a logical nexus between a protected activity (Plaintiffs' complaints to management about employment discrimination) and KCHA's receipt of federal funds, Plaintiffs "must show either (1) that a primary objective of the federal funding defendant receives is to provide employment, or (2) that the employment discrimination complained of necessarily causes discrimination against the intended beneficiaries of the federal funding." *Fields*, 2021 U.S. Dist. LEXIS 180615, at *43-44 (citation omitted).  Plaintiffs do not allege (2), that KCHA discriminated against the intended beneficiaries of federal funds.  Rather, they allege that a primary objective of KCHA's federal funds was to provide employment.  Pl. Opp'n, Dkt. 19 at 10.  Specifically, Plaintiffs allege that the Moving to Work program, 42 U.S.C. § 1437f, the Family Self-Sufficiency program, 24 C.F.R. § 984.101, and Section 3 of the Housing and Urban Development Act of 1968, Pub L. 90-448 § 3, are primarily aimed at providing employment.  *Id.*

Plaintiffs argue that their allegations regarding the primary objective of these laws are sufficient to survive a Rule 12(b)(6) motion, and that any dispute on this subject is appropriately resolved at "trial or summary judgment."  *Id.*  The Court disagrees.  Statutory interpretation is a question of law, and determining the primary objective of the laws cited by Plaintiffs is a matter of statutory interpretation.  *See United States v. Stephens*, 237 F.3d 1031, 1033 (9th Cir. 2001). The Court will therefore consider each of the cited laws in turn.

Plaintiffs cite the Moving to Work program.  42 U.S.C. § 1437f.  That statute authorizes "assistance payments [to] be made with respect to existing housing" with the aim of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." *Id.* § 1437f(a).  That statute allows the Department of Housing and Urban Development to dispense funds to local public housing agencies, which then use the funds to provide assistance payments

5

to low-income residents. *Id.* § 1437f(b). Plaintiffs' complaint alleges that § 1437f "includes as a primary objective the employment of resident services staff and coordinators to assess resident needs" but does not cite any particular section of the voluminous law. FAC, Dkt. 14 at 34-35. In fact, the only subsection of the statute that mentions employing staff states: "the Secretary may consider . . . the cost of employing or otherwise retaining the services of one or more service coordinators . . . to coordinate the provision of any services within the project for residents of the project who are elderly or disabled families." 42 U.S.C. § 1437f(d)(2)(B)(i). The fact that this is a discretionary, not mandatory, provision of the law, and that this subsection is buried in a statute that otherwise does not mention housing agencies' staff, clearly demonstrates that employment is not a primary objective of the Moving to Work program.

Plaintiffs next cite the Family Self-Sufficiency program, 24 C.F.R. § 984.101. To ascertain the primary objectives of this regulation, the Court naturally looks to the section entitled "Program Objectives." *Id.* § 984.102. The objectives are described as: "reduc[ing] the dependency of low-income families on welfare assistance and housing subsidies. . . . [by] provid[ing] opportunities for education, job training, counseling, and other forms of social service assistance, while living in assisted housing, so that [beneficiaries] may obtain the education, employment, and business and social skills necessary to achieve self-sufficiency." *Id.* Plaintiffs' complaint again insists that the program dispenses funds "expressly designated for KCHA's employment of coordinators to develop and provide the self-help programs." FAC, Dkt. 14 at 35. Even assuming this is true, that does not mean that a primary objective of the law is to provide employment. At best, the employment of coordinators is incidental to the objectives of the program, which is to provide assistance to public housing residents.

Finally, Plaintiffs cite Section 3 of the Housing and Urban Development Act of 1968, Pub

L. 90-448 § 3. FAC, Dkt. 14 at 35-36. Section 3 is entitled "Jobs in Housing" and states that any employment opportunities that arise in the course of administering federal housing programs should be given to low-income individuals to the extent feasible. Pub. L. 90-448 § 3(1). Plaintiffs allege that "Section 3 applies to most federal financial assistance HUD provides to KCHA." FAC, Dkt. 14 at 36. Section 3 thus attaches requirements to some federal funding but does not itself provide funding. The relevant question is whether providing employment is "a primary objective of the Federal *financial assistance*." 42 U.S.C. §2000d-3 (emphasis added). Section 3 is not the statute under which financial assistance is being provided to KCHA. Therefore, the primary objective of Section 3 is irrelevant. Moreover, that fact that Section 3 requires programs like Moving to Work and Family Self-Sufficiency—which otherwise have little to do with employment—to give preference to low-income candidates in hiring does not alter the primary objectives of those programs. In fact, Section 3 does not result in housing programs "providing" any employment that they would not already provide—it simply regulates who is hired if and when jobs arise.

Accordingly, none of the federal funding Plaintiffs have cited has a primary purpose of providing employment. Plaintiffs have failed to meet this threshold requirement for a Title VI retaliation claim. Title VI is not the proper statute under which Plaintiffs may pursue a discrimination claim, and therefore the claim is dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' motion to dismiss Plaintiffs' Title VI claim (Dkt. 17).

DATED this 1st day of November, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE